IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MIA WOODRUFF,

    Plaintiff,

v.

DOLLAR GENERAL CORPORATION,

    Defendant.

C.A. No. 21-1705-GBW

## **MEMORANDUM ORDER**

Plaintiff Mia Woodruff asserts claims of gender-based harassment and discrimination arising out of her employment relationship with her former employer, Dolgencorp, LLC ("Dollar General").[1] In working for Dollar General, Ms. Woodruff voluntarily agreed to resolve employment disputes in arbitration pursuant to two separate valid and enforceable Dollar General Employee Arbitration Agreements (collectively, the "Arbitration Agreements"). Because her claims are arbitrable, Ms. Woodruff will be compelled to arbitration and this action stayed pending that arbitration.

### I. **BACKGROUND**

Ms. Woodruff worked for Dollar General between 2017 and 2019, commencing and ending her employment on two separate occasions. D.I. 12; 13-1 ¶ 3. Prior to starting both periods of employment, Ms. Woodruff signed two Arbitration Agreements with Dollar General—the first on

---

[1] Dollar General explains (and Ms. Woodruff does not dispute) that the proper defendant to this action is Dolgencorp, LLC as the entity that employed Ms. Woodruff. D.I. 11 at n. 1.

November 4, 2017, and the second on September 6, 2018. D.I. 12-3, 12-4.[2] The Arbitration Agreements, identical in form except for the dates of execution, state:

> You agree that, with the exception of certain excluded claims described below, any legal claims or disputes that you may have against Dollar General, its parent and subsidiary corporations, employees, officers and directors arising out of your employment with Dollar General or termination of employment with Dollar General ("Covered Claim" or "Covered Claims") will be addressed in the manner described in this Agreement. You also understand that any Covered Claims that Dollar General may have against you related to your employment will be addressed in the manner described in this Agreement.
>
> [ . . . ]
>
> The procedures in this Agreement will be the exclusive means of resolving Covered Claims relating to or arising out of your employment or termination of employment with Dollar General, whether brought by you or Dollar General. This includes, but is not limited to, claims alleging violations of wage and hour laws, state and federal laws prohibiting discrimination, harassment, and retaliation, claims for defamation or violation of confidentiality obligations, claims for wrongful termination, tort claims, and claims alleging violation of any other state or federal laws, except claims that are prohibited by law from being decided in arbitration, and those claims specifically excluded in the paragraph below.
>
> Covered Claims do not include claims for unemployment insurance benefits, workers' compensation benefits[workers' compensation discrimination and retaliation claims are Covered Claims], whistleblower claims under the Sarbanes-Oxley Act, and claims for benefits under the Employee Retirement Income Security Act. Covered Claims also do not include claims pending in court as of the date this Agreement is signed by you, and claims concerning the scope or enforceability of this Agreement.
>
> [ . . . ]
>
> You expressly waive your right to file a lawsuit in court against Dollar General asserting any Covered Claims. You also waive your right to a jury trial. Dollar General waives its right to file a lawsuit for any Covered Claims it may have against you, and Dollar General waives its right to a jury trial.

---

[2] Although Ms. Woodruff states she does not remember signing the Arbitration Agreements, she "acknowledge[s] that Ex. B looks familiar and . . . recall[s] that at the onboarding process in November of 2017." D.I. 13-1 ¶ 6. She does not otherwise argue that she was not a signatory to these agreements.

*Id.* at 1-2.

While employed by Dollar General, Ms. Woodruff alleges that her manager "touched her body and pressed her breasts up against Ms. Woodruff on more than one occasion." D.I. 1 ¶ 7. Ms. Woodruff avers that she "asked her manager not to do this but she continued to do it three more times" and, as a result of refusing her advances, Ms. Woodruff's manager allegedly "teased her, degraded her, and called her names in front of other employees." *Id.* ¶ 9. Ms. Woodruff explains that even though she reported her managers' conduct to "Dollar General Corporation verbally twice, both through her assistant manager and via the Employee Complaint Hotline," *Id.* ¶ 10, "Dollar General failed to appropriately respond." *Id.* ¶ 11. According to Ms. Woodruff, Dollar General told her "they did not have to like each other but do have to work together." *Id.* ¶ 12. As a result of Dollar General's purported inaction, Ms. Woodruff explains that she "had no choice but to resign in order to avoid further sexual harassment" and did so "on November or December 2019." *Id.* ¶ 11-16.[3]

Ms. Woodruff states that, in December 2019, she submitted a Charge of Discrimination to the Delaware Department of Labor and the Equal Employment Opportunity Commission ("EEOC") against "all Defendants." *Id.* ¶ 4.[4] She explains that, on July 13, 2021, the Delaware Department of Labor sent her a "Final Determination and Right to Sue Notice and Reasonable Cause Determination and Notice of Mandatory Conciliation." *Id.* ¶ 5. She claims Dollar General did not participate in conciliation and, therefore, the "Department of Labor Right to Sue became

---

[3] According to Dollar General, Ms. Woodruff's employment was terminated on April 30, 2019 "for walking off the job without notice." D.I. 12 ¶ 5.

[4] While Ms. Woodruff states that the Charge of Discrimination was directed "against all Defendants," D.I. 1 ¶ 4, she does not identify the specific entities charged. The Court assumes Ms. Woodruff directed her action against either Dollar General Corporation or Dolgencorp, LLC.

3

effective on July 30, 2021." *Id.* She also explains that, on September 30, 2021, the EEOC sent her "a Dismissal and Notice of Rights with respect to her claim against Defendant." *Id.*

Ms. Woodruff initiated this action on December 2, 2021, asserting claims of gender-based harassment and discrimination in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), *et seq.* and the Delaware Discrimination in Employment Act, 19 Del. C. §§ 710, *et seq.* D.I. 1. Dollar General now moves for an order (1) compelling Ms. Woodruff to arbitrate her claims against Dollar General and (2) dismissing or staying these proceedings pending arbitration (the "Motion"). D.I. 10. Dollar General's Motion has been fully briefed. D.I. 11, 13, 14.

## II. LEGAL STANDARD

"The Federal Arbitration Act (FAA) reflects the 'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). It requires that the Court, "upon being satisfied that [an] issue involved in [a] suit or proceeding is referable to arbitration" under an arbitration agreement, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ...." 9 U.S.C. § 3.

To determine whether an issue in a suit or proceeding is "referable to arbitration," courts "must consider two 'gateway' questions: (1) 'whether the parties have a valid arbitration agreement at all' (i.e., its enforceability), and (2) 'whether a concededly binding arbitration clause applies to a certain type of controversy' (i.e., its scope)." *Remicade*, 938 F.3d at 519 (quoting *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416-17 (2019)). Subject to certain exceptions, state law governs both questions. *Id.* at 522; *Jaludi v. Citigroup*, 933 F.3d 246, 254 (3d Cir. 2019).

4

## III.   DISCUSSION

Ms. Woodruff argues that the Arbitration Agreements are unenforceable in view of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA). D.I. 13 at 2. Alternatively, Ms. Woodruff argues that "the contract is voidable because Ms. Woodruff did not understand what it meant and so lacked the capacity to assent to its terms." *Id.* at 1. The Court does not find the Arbitration Agreements unenforceable or voidable, and concludes that their scope encompasses Ms. Woodruff's claims.

### A.   The Arbitration Agreements Are Enforceable and the EFAA Does Not Apply Retroactively

Under the EFAA, ". . . at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal [or] State law and relates to the . . . sexual harassment dispute or the sexual harassment dispute." 9 U.S.C. § 402(a).[5] The EFAA, however, "shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act." EFAA, Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. § 402). The EFAA was enacted on March 3, 2022. *Id.*

Here, because the EFAA does not apply retroactively, it cannot save Ms. Woodruff from arbitration. Ms. Woodruff explains that she "worked for Dollar General Corporation in approximately 2018 or 2019", D.I. 1 ¶ 7, and that her manager's conduct occurred during her employment, continuing until Ms. Woodruff resigned "in order to avoid further sexual

---

[5] Congress defined "predispute arbitration agreement" as "any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." 9 U.S.C. § 401(1). A "sexual assault dispute" means "a dispute involving a nonconsensual sexual act or sexual contact." 9 U.S.C. § 401(3). A "sexual harassment dispute" is a dispute "relating to conduct that is alleged to constitute sexual harassment." 9 U.S.C. § 401(4).

5

harassment." *Id.* ¶ 14; *see also id.* at 8-16. In December 2019, Ms. Woodruff filed her Charge of Discrimination with the EEOC, and the complaint to this Court was filed on December 2, 2021. D.I. 1. *All* of these dates are before March 3, 2022, when the EFAA was enacted. Accordingly, the EFAA cannot be applied to Ms. Woodruff's case. *See, e.g.*, *Steinberg v. Capgemini Am., Inc.*, C.A. No. 22-489, 2022 WL 3371323, at *3 (E.D. Pa. Aug. 16, 2022) (compelling to arbitration sexual harassment claims accruing before EFAA's enactment).

While Ms. Woodruff acknowledges that the EFAA "technically" does not apply to this action, she argues that the Court "should not enforce the Agreement because it contravenes public policy." D.I. 13 at 2. Ms. Woodruff declines to develop this theory other than to state that, "[a] law need not explicitly make a contract illegal in order for the Court to find that [the] contract is in violation of public policy as expressed by the law." *Id.* Unfortunately, if Congress had intended arbitration agreements like the one Ms. Woodruff signed to be covered by the EFAA—that is, held invalid or unenforceable based on public policy—it would have enacted a law with retroactive coverage. Ms. Woodruff cannot ask the Court to do what the EFAA proscribes. *See, e.g.*, *Tantaros v. Fox News Network, LLC.*, C.A. No. 19-7131 (ALC), 2022 WL 4614755, at *2 n.1 (S.D.N.Y. Sept. 30, 2022) ("The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021. That law, signed into law on March 3, 2022, well after Plaintiff's arbitration agreement and lawsuit, does not apply retroactively; it cannot be used to shield Plaintiff from arbitration.").

### B. Ms. Woodruff Did Not Plead That the Agreements Are Voidable or That She Lacked Contractual Capacity

Citing to Delaware law, Ms. Woodruff argues that, "[t]his Court should not enforce a pre-dispute arbitration agreement that was beyond . . . [her understanding] when she applied for her job at Dollar General" because she is "uneducated and unsophisticated" and, therefore, "did not

understand the Agreement *even if* she did click that she agreed." D.I. 13 at 3. Under Delaware[6] law, "[a]dults are presumed to have contractual capacity and the burden of proving otherwise rests with the party alleging incapacity." *Bettis v. Premier Pool & Prop. Mgmt., LLC*, C.A. No. 6858-VCN, 2012 WL 4662225, at *2 (Del. Ch. Sept. 26, 2012). Here, Ms. Woodruff pleads no facts related to any claim of contractual incapacity, and she "may not amend [her] complaint through [her] opposition brief." *Schiavo v. Carney*, 548 F. Supp. 3d 437, 441 n.3 (D. Del. 2021), *aff'd*, No. 21-2368, 2021 WL 6550638 (3d Cir. Nov. 18, 2021).

Moreover, the U.S. Supreme Court has observed: "It will not do for a [person] to enter into a contract, and, when called upon to respond to its obligations, to say that [s]he did not read it when [s]he signed it, or did not know what it contained." *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875). In the Third Circuit, "[a]rbitration agreements in the employment context are not exempt from this principle." *Morales*, 541 F.3d at 223. It was Ms. Woodruff's "obligation to ensure [s]he understood the Agreement[s] before signing." *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 223 (3d Cir. 2008). That she did not cannot excuse her obligations thereunder. Therefore, Ms. Woodruff's argument that there "is no Binding Agreement" due to lack of capacity fails.

### C. Ms. Woodruff's Claims Fall Within the Scope of the Arbitration Agreements

In determining whether the particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[.]' " *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 524 (3d Cir. 2009) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)). This presumption applies whenever a contract has an arbitration clause and is "particularly applicable where the clause is [ ] broad."

---

[6] Although the Arbitration Agreements do not appear to contain a choice of law provision, both parties cite to Delaware authority in evaluating their validity. *See* D.I. 11 at 11; D.I. 13 at 3.

7

*Monfared v. St. Luke's Univ. Health Network*, 767 F. App'x 377, 379 (3d Cir. 2019) (quoting *AT & T Techs., Inc.*, 475 U.S. at 650)). "'Any doubts as to the scope of arbitratable issues should be resolved in favor of arbitration . . .'" *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 155 (3d Cir. 2000) (quoting *Pattern Sec. Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 405-407 (3d Cir. 1987)). When the presumption applies, "a court may not deny a motion to compel arbitration 'unless it may be said with positive assurance that the ... arbitration clause is not susceptible of an interpretation that covers the dispute.' " *Cup v. Ampco Pittsburgh Corp.*, 903 F.3d 58, 64-65 (3d Cir. 2018) (quoting *AT & T Techs., Inc.*, 475 U.S. at 650). "If . . . the court determines that an agreement exists and that the dispute falls within the scope of the agreement, it then must refer the matter to arbitration without considering the merits of the dispute." *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990) (overruled on other grounds) (citing *AT & T Techs., Inc.*, 475 U.S. at 649).

Here, the Arbitration Agreements apply to "any legal claims or disputes that you may have against Dollar General, its parent and subsidiary corporations, employees, officers and directors arising out of your employment with Dollar General or termination of employment with Dollar General" and specifically include "claims alleging violations of . . . state and federal laws prohibiting discrimination, harassment, and retaliation . . . and claims alleging violation of any other state or federal laws." D.I. 12-3, 12-4. The Third Circuit has enforced similarly broad language. *See, e.g.*, *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) (finding arbitration enforceable for "any dispute aris[ing] from . . . employment"). Ms. Woodruff's complaint and her affidavit accompanying her Opposition Brief confirm that her claims "aris[e] out of [her] employment with Dollar General" and, thus, fall within the scope of the Arbitration

Agreements. *See, e.g.*, D.I. 1 ¶¶ 7-16; D.I. 13-1 ¶ 3.[7] Therefore, Ms. Woodruff must arbitrate them. *PaineWebber*, 921 F.2d at 511.

### IV. CONCLUSION

For the foregoing reasons, Dollar General's Motion is granted and Ms. Woodruff is compelled to arbitration. Because the FAA requires district courts to stay proceedings pending arbitration, rather than dismiss claims outright, this action will be stayed pending arbitration. *See Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 208 n.7 (3d Cir. 2010) (district court erred by granting defendant's motion to dismiss rather than staying claims pending results of arbitration). Dollar General may move to lift the stay and dismiss this action if Ms. Woodruff does not pursue her claims in arbitration.

\* \* \*

At Wilmington this 19th day of December, 2022, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Compel Arbitration and Dismiss Or, Alternatively, Stay All Proceedings Pending Arbitration is **GRANTED**. D.I. 10. This case is **STAYED** pending the results of the arbitration. Defendant may move to lift the stay and dismiss this action if Plaintiff does not pursue her claims in arbitration.

2. The parties **SHALL FILE** a status report every six months, or within one week of the arbitration decision, whichever comes first.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[7] Indeed, Ms. Woodruff does not dispute (and thus, concedes) that her claims lie within the Arbitration Agreements' scope. *See generally* D.I. 13.

9